**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Counsel for Defendants

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA N. GUNDERSON, | Case No: 3:25-cv-00634-VC |
| Plaintiff, | **DEFENDANT POTTER HANDY, LLP'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| POTTER HANDY, LLP, | Hearing Date: March 12, 2026 |
| Defendants. | Hearing Time: 2:00 p.m. |
| | Courtroom: 4—17th Floor |
| | Hon. Vince Chhabria |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. LEGAL STANDARD ..................................................................................................... 1

III. LEGAL ARGUMENT ..................................................................................................... 2

    A. Plaintiff concedes that her ADA pay discrimination, ACA, and NIED Claims fail as a matter of law. ................................................................................ 2

    B. Plaintiff fails to establish a prima facie case for discrimination based on demotion because Defendant had no knowledge of her disability. ......................... 2

    C. Defendant is entitled to summary judgment on Plaintiff's ADA claims based on demotion because Plaintiff fails to meet her burden of proving that the legitimate and non-discriminatory reasons proffered by Defendant were pretextual. ................................................................................................................ 4

    D. Defendant is entitled to summary judgment on Plaintiff's ADA claims for wrongful termination because Plaintiff fails to meet her burden of proving the legitimate and non-discriminatory reasons proffered by Defendant were pretextual. ................................................................................................................ 8

    E. Defendant is entitled to summary judgment on Plaintiff's IIED claims because ordinary employment disputes are not actionable under this theory as a matter of law. ................................................................................................. 10

        1. No Evidence of Intent to Cause Severe Emotional Distress ....................... 11

        2. No Admissible Evidence of Severe Emotional Distress ............................ 11

IV. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) .................................................................. 1

*Bacon v. Great Plains Mfg., Inc.*, 958 F. Supp. 523, 531 (D. Kan. 1997) ......................................... 3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–26 (1986)............................................................. 2, 12

*Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095–96 (9th Cir. 2005)................................... 4

*Colclough v. Gwinnett Pub. Schs.*, 734 F. App'x 660, 663 (11th Cir. 2018) ..................................... 3

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 (9th Cir. 2000) ......................................... 9, 10

*Cotton v. City of Alameda,* 812 F.2d 1245, 1249 (9th Cir. 1987) ............................................... 9, 10

*Crady v. Liberty Nat. Bank & Tr. Co. of Indiana*, 993 F.2d 132, 136-37 (7th Cir. 1993)................ 6

*Curley v. City of N. Las Vegas*, 772 F.3d 629, 633 (9th Cir. 2014) .................................................. 8

*Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) ........................................................ 5

*Flaherty v. Gas Rsch. Inst.*, 31 F.3d 451, 457 (7th Cir. 1994).................................................... 6, 7

*Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 45 (1987) .................................................... 11

*Guthmann v. Classic Residence Mgmt. Ltd. P'ship*, 2017 WL 3007076, at *9 (N.D. Cal. July 14,
    2017)................................................................................................................................ 4, 5

*Hamilton v. Schneider Nat'l Carriers, Inc.*, 2019 WL 11553744, at *15 (N.D. Ga. Jan. 24, 2019) . 3

*Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)........................................ 5

*Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ................................................ 2

*Hernandez v. Hughes Missile Sys. Co* ............................................................................................ 4

*Hughes v. Pair*, 46 Cal. 4th 1035 (2009) ...................................................................................... 11

*Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80–81 (Cal. Ct. App. 1996) ........................... 11

*Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir.1985) .................................................................. 7

*Kent v. TIMEC Co.*, No. 10-1329-KGS, 2012 WL 3962892, at *7 (D. Kan. Sept. 28, 2012) .......... 7

*Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 887 (6th Cir. 1996)............................................ 6, 7

*Lawler v. Montblanc N. Am.*, LLC, 704 F.3d 1235, 1245 (9th Cir. 2013)...................................... 11

*Light v. Dep't of Parks & Rec.*, 14 Cal. App. 5th 75, 101 (2017)................................................... 11

*Luckert v. Gutierrez*, 2025 WL 672940, at *2, *4 (N.D. Cal. Mar. 3, 2025).................................... 8

*Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ................................................................................................................. 1

*Moreno v. Cox Commc'ns Las Vegas, Inc.*, 818 F. App'x 763, 764 (9th Cir. 2020) ......................... 4

*Murray v. Mayo Clinic*, 934 F.3d 1101, 1107–08 (9th Cir. 2019) .............................................. 2, 10

*Schneider v. TRW,* Inc., 938 F.2d 986, 992 (9th Cir. 1991) ............................................................ 11

*Snead v. Metro. Prop. & Cas. Ins. Co*, *supra*, 237 F.3d at 1093-94 .................................................. 4

*Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883–85 (Cal. Ct. App. 1989) ....................... 11

**<u>Statutes</u>**

Fed. R. Civ. P. 56(a) ........................................................................................................................ 12

## I.   INTRODUCTION

Plaintiff's case against Potter Handy is a shadow of what it once purported to be. The court dismissed her FEHA claims at the outset, and now the outright abandonment of her ADA pay discrimination (Count One), ACA (Count Four), and NIED (Count Seven) claims confirm that her theories have always lacked merit. Her remaining claims for discriminatory demotion (Count Two), discriminatory termination (Count Three), and IIED (Count Six), are hanging from a similarly untenable thread. On the undisputed record before the Court, Plaintiff does not create a genuine dispute of material fact on any element that would allow these claims to proceed to trial. Her opposition and motion rely heavily on her subjective perception that the firm's decisions during this time period were somehow all specifically calculated to harm her, even though the undisputed facts clearly demonstrate that they were purely in response to financial and business uncertainties. Defendant gave Plaintiff all the time and space she needed to heal. Defendant did not judge her. Instead, it supported her, and she thanked the firm more than once for its flexibility and understanding. That Defendant had to let her go is unfortunate. However, Plaintiff's accusations of discrimination are nothing more than a projection of her own insecurities.

Rule 56 requires evidence, not narrative. A meticulous application of the well-established *McDonnell Douglas* framework can only lead this Court to find that Plaintiff has not met her burden to prove either a prima facie case or pretext for disability discrimination. The court should grant summary judgment in Defendant's favor on all remaining claims.

## II.   LEGAL STANDARD

A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party opposing summary judgment must present specific facts showing a genuine issue for trial; "some metaphysical doubt as to the material facts" is insufficient. *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Here, Plaintiff relies on argument and conjecture rather than specific, admissible evidence sufficient to create a genuine dispute of material fact as to her demotion, wrongful termination, and IIED claims.

### III. LEGAL ARGUMENT

**A. Plaintiff concedes that her ADA pay discrimination, ACA, and NIED Claims fail as a matter of law.**

Under Rule 56, Potter Handy satisfied its initial burden by demonstrating the absence of evidence supporting essential elements of Plaintiff's ADA pay discrimination, ACA, and NIED claims. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–26 (1986) (summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case). The burden therefore shifted to Plaintiff to designate specific facts showing a genuine dispute. She did not. Instead, she abandoned those claims entirely. That abandonment confirms what the summary judgment record already established: Plaintiff lacks evidence sufficient to sustain her burden at trial. Accordingly, judgment as a matter of law is warranted as to these claims.

**B. Plaintiff fails to establish a prima facie case for discrimination based on demotion because Defendant had no knowledge of her disability.**

As outlined in Defendant's opposition/cross-motion, Plaintiff must show the reassignment would not have occurred *but for* her disability. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1107–08 (9th Cir. 2019). In other words, for Defendant to discriminate against her based on her disability, Defendant would have had to have knowledge of her disability in the first place. Plaintiff argues that Defendant had "constructive knowledge" of her alcoholism and bipolar disorder. However, each of the facts that Plaintiff provides in support only demonstrate what *she* knew about her own disabilities, not what Defendant could have or should have known.

Courts reject frameworks that impose liability without actual knowledge and caution that the ADA "does not require clairvoyance." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995). Vague complaints of stress, emotional difficulty, or general symptoms without disclosure of a medical condition are insufficient to find an employer had constructive notice of disability. See *Hamilton v. Schneider Nat'l Carriers, Inc.*, 2019 WL 11553744, at *15 (N.D. Ga. Jan. 24, 2019)(employee's complaints regarding job-related stress did not put the employer on notice of his

disability); see also, *Bacon v. Great Plains Mfg., Inc.*, 958 F. Supp. 523, 531 (D. Kan. 1997)(employee's symptoms were not obvious manifestations of a disability and employer's knowledge of her "stressful family situation" were insufficient to demonstrate company had knowledge of disability). "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of an employee's disability." *Colclough v. Gwinnett Pub. Schs.*, 734 F. App'x 660, 663 (11th Cir. 2018).

Here, Plaintiff alleges that she became "psychotic" toward the end of 2022 and began experiencing paranoia and hallucinations. (Dkt. 68-1, Pl. Decl. ¶ 2.) These hallucinations included "hearing" Mr. Potter and Mr. Handy criticizing her and her work. (*Id.*) Plaintiff does not allege that she directly told Mr. Potter or Mr. Handy any of this. Instead, her declaration states that the only detail she provided to them was that she was too "foggy" to continue working and needed to go on leave. (Dkt. 68-1, Pl. Decl. ¶ 6). In fact, both parties have produced the December 2022 resignation e-mails as evidence, and it is undisputed that the only other information she revealed to them during that time were that she was "dealing with a lot of stress"; that the stress was giving her "a lot of anxiety"; and that her "mind is so pressed upon concerns." (Dkt. 68-1, Pl. Exh. 11, p. 9). From this, Plaintiff asks the Court to find that Defendant should have known she was bipolar. This would require a significant—and unsupported—inferential leap.

Instead, the subsequent e-mail sent by Mr. Potter demonstrates that he understood only that Plaintiff was going through a personally stressful time and nothing more. Specifically, he states: "We have and will continue to keep your position open for you. You took time off due to stress or otherwise needing to be away from the stress of your job." (Dkt. 68-1, Pl. Exh. 13, p. 12). This is an objectively reasonable interpretation based on the vague statements Plaintiff offered at the time regarding her circumstances. As Mr. Potter explains in his supporting declaration, he did not know the specific details of necessitating Ms. Gunderson's leave, nor did he require her to provide any further explanation. (Dkt. 65-2, Potter Decl. ¶ 21).

As Plaintiff admits, she chose not to reveal her bipolar disorder to the firm until March 2023 (Dkt. 68, Pl. Opp., at 4.) which predates the events leading to her reassignment. Mr. Handy took

over Plaintiff's role in December 2022 when she went on indefinite leave (Dkt. 65-2, Potter Decl. ¶ 25), and Plaintiff admits that she was notified her of reassignment *before* she returned from leave in March 2023. (Dkt. 68-1, Pl. Decl. ¶ 9). Under *Hernandez v. Hughes Missile Sys. Co*. 362 F.3d 564, 568–69 (9th Cir. 2004), an ADA plaintiff must show "sufficient evidence from which a jury could conclude that [the employer] did make its employment decision based on [the plaintiff's] status as disabled," and that the disability "actually played a role in the employer's decisionmaking process." Because Plaintiff fails the "but for" test necessary to establish a prima facie case, the Court can and should grant summary judgment in Defendant's favor on Plaintiff's demotion claims on these grounds alone.

   **C. Defendant is entitled to summary judgment on Plaintiff's ADA claims based on demotion because Plaintiff fails to meet her burden of proving that the legitimate and non-discriminatory reasons proffered by Defendant were pretextual.**

   As discussed above, Defendant has proffered legitimate, non-discriminatory reasons for her reassignment: (1) Mr. Handy covered the fee motion work during her indefinite leave of absence in order to fill the vacancy in the role; and (2) when a vacancy arose in the dispositive motion department, Plaintiff was reassigned because she previously expressed a specific preference for drafting default judgments. Defendant having satisfied its burden, the burden now shifts back to Plaintiff to prove that each of these reasons were pretextual. See *Snead v. Metro. Prop. & Cas. Ins. Co*, *supra*, 237 F.3d at 1093-94; see also, *Moreno v. Cox Commc'ns Las Vegas, Inc*., 818 F. App'x 763, 764 (9th Cir. 2020). Pretext may be shown by direct or circumstantial evidence. Because direct evidence is considered highly probative, a plaintiff need only provide minimal direct evidence to survive summary judgment. *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095–96 (9th Cir. 2005); *Guthmann v. Classic Residence Mgmt. Ltd. P'ship*, 2017 WL 3007076, at *9 (N.D. Cal. July 14, 2017). On the other hand, where the plaintiff relies on circumstantial evidence, that evidence must be "specific and substantial" to defeat the employer's motion. *Id. Guthmann* further explains that an employee cannot establish pretext merely by asserting the employer's decision was "wrong, mistaken or unwise," but must identify "weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions" in the employer's stated reasons sufficient to render them unworthy of credence. *Guthmann*, 2017 WL 3007076, at *9. Even assuming arguendo that Plaintiff can establish a prima facie case in the first instance, Plaintiff has failed to meet this burden to show pretext. Plaintiff offers no direct evidence of discriminatory motive. She also fails to point to any specific, substantial circumstantial evidence that Defendant's reasons were false or that discrimination was the real reason. Instead, she relies on subjective dissatisfaction with the reassignment, which is insufficient to raise a triable issue of pretext at summary judgment.

As outlined in Defendant's opposition/cross-motion, the events leading to her reassignment occurred in response to the operational needs of the firm, as well Plaintiff's own expressed preferences: Mr. Handy took over Plaintiff's role to fill the vacancy while she was on leave, and when there was a vacancy in the dispositive motions department, Plaintiff was reassigned there because she previously expressed a specific preference to work on default judgments. (Dkt. 65, Def.'s Opp'n to Pl.'s MSJ & Cross-MSJ, at 12). Plaintiff has not provided any direct or circumstantial evidence demonstrating that any of these facts are false.

Instead, Plaintiff's sole theory for pretext relies on her argument that she "lost independence, authority, status, and the ability to earn an associated raise." (Dkt. 68, Pl.'s Opp'n & Reply at 1, 3). However, Title I requires a *materially adverse* change in the terms and conditions of employment, not a subjective belief that one assignment is more prestigious. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)(adverse action must "materially affect" the terms of employment). Here, Plaintiff argues that the reassignment adversely affected her role because the work in the dispositive motions department was distributed by Ms. Masanque, and that Plaintiff could not unilaterally submit templates to the firm's repositories. However, neither of these trivial changes to her job responsibilities resulted in a "materially significant disadvantage" to the terms and conditions of her employment. See *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). In her fee motion role, her primary responsibility was to draft motions. In her dispositive motion role, her primary responsibility was to draft motions. Plaintiff fails to explain why drafting one type of motion over another signifies a loss of status that resulted in a material disadvantage to her. Any changes to

the way the work was distributed did not affect her ability to draft motions or to draft them independently after the work was distributed by Ms. Masanque using whatever templates Plaintiff preferred (regardless of whether they were in the firm's repositories).

Plaintiff's apparent fixation on the loss of her alleged title of "Head of Fees" is similarly irrelevant. Courts consistently hold that a change in title alone is insufficient to constitute an adverse employment action when unaccompanied by a material change in pay or working conditions. This is true even where the previously held title implied a supervisory position. See *Crady v. Liberty Nat. Bank & Tr. Co. of Indiana*, 993 F.2d 132, 136-37 (7th Cir. 1993)(loss of "Assistant Vice President" designation upon reassignment as a "collections officer" not a materially adverse employment action); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 887 (6th Cir. 1996)(plaintiff's change in title from "nursing supervisor" to "unit RN" was not a materially adverse employment action because she enjoyed the same rate of pay and suffered no material change to her working conditions); *Flaherty v. Gas Rsch. Inst.*, 31 F.3d 451, 457 (7th Cir. 1994)(reassignment from "principal scientist" to "fuel cell project manager" not a materially adverse employment action even where plaintiff would have to report to a former subordinate in his new position). The court's holding in *Flaherty* is particularly analogous to the instant case:

> Flaherty does not dispute these facts but points out that the fuel cell position would have required that he report to a former subordinate who was merely a manager, whereas he previously had reported to a senior vice president. In addition, he maintains that his own title would have changed from principal scientist to senior project manager. Yet those changes are largely semantic where the employee's salary, benefits, and level of responsibility would remain unchanged. Although the reporting relationship **may have bruised Flaherty's ego**, we indicated in Spring that a plaintiff's perception that a lateral transfer would be personally humiliating is insufficient, absent other evidence, to establish a materially adverse employment action.

Here, Plaintiff feels slighted because she apparently resented having to collaborate with other attorneys in the department, including a long-time colleague—who she admittedly viewed as an

equal—instead of having a department to herself. Like in *Flaherty*, Plaintiff bemoans the fact that she now had to coordinate her work with Ms. Masanque instead of reporting solely to a partner, Mr. Handy. The changes she points to did not affect her overall place in the firm's hierarchy in which Mr. Potter retained sole authority to approve raises, alter other benefits, or grant leave. While Plaintiff may have preferred to work alone in her own department rather than with the "several" others in dispositive motions, it is undisputed that these inconsequential alterations to her responsibilities did not materially disadvantage her in any way. "[A] plaintiff's subjective impressions as to the desirability of one position over another is not controlling." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996), citing to, *Kelleher v. Flawn*, 761 F.2d 1079, 1086 (5th Cir.1985). Plaintiff's bruised ego does not create an actionable claim for discrimination.

The minimal changes to her job responsibilities also did not result in any disadvantage in terms of her compensation. Plaintiff does not dispute that her salary remained the same after the reassignment. Indeed, Plaintiff promptly abandoned her wage discrimination claims in this case when faced with undisputed evidence that she was one of the highest paid attorneys in 2022 and 2023. (Dkt. 65, Def.'s Opp'n to Pl.'s MSJ & Cross-MSJ, at 2). Her demotion claims should be discredited for the same reasons. Moreover, Plaintiff also admits that her fee motion role did not initially come with a raise. (Dkt. 68-1, Pl. Decl. ¶ 12). Therefore, her claim that she lost the ability to earn a raise following the reassignment is unsupported since she does not allege that she sought a raise after her reassignment and was denied, nor does she allege that she was explicitly informed that the reassignment meant she was no longer eligible for a raise in the future. See *Kent v. TIMEC Co.*, No. 10-1329-KGS, 2012 WL 3962892, at *7 (D. Kan. Sept. 28, 2012) (rejecting "lost raise" theory where plaintiff failed to demonstrate eligibility for a raise).

Plaintiff's theory is entirely conclusory: Defendants purportedly "did not want a mentally unstable attorney handling [the firm's] money" and therefore "promptly demoted" her. (Dkt. 68, Pl.'s Opp'n & Reply, at 4–5). Plaintiff's theory is not evidence; it is subjective speculation. Conclusory and speculative assertions are insufficient to raise a genuine issue of material fact at summary judgment. *Luckert v. Gutierrez*, 2025 WL 672940, at *4, *6 (N.D. Cal. Mar. 3, 2025).

When the moving party has met its burden of production, the nonmoving party must "go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial," and "conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Id.* at *2, *4.

It follows that Rule 56 does not permit defeat of summary judgment on generalized assertions that a plaintiff felt less independent or of a lower status because such subjective impressions—untethered to concrete, material consequences to the terms of her employment—are precisely the type of conclusory assertions insufficient as a matter of law.

### D. Defendant is entitled to summary judgment on Plaintiff's ADA claims for wrongful termination because Plaintiff fails to meet her burden of proving the legitimate and non-discriminatory reasons proffered by Defendant were pretextual.

The Ninth Circuit has unequivocally held that "[d]isputing only one of several well-supported, independently sufficient reasons for termination is generally not enough to defeat summary judgment. As a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual." *Curley v. City of N. Las Vegas*, 772 F.3d 629, 633 (9th Cir. 2014)(cleaned up). That governing principle is dispositive here. Defendant articulated two legitimate and independently sufficient reasons for Plaintiff's termination: (1) the phased closure of its ADA practice area which necessitated a significant reduction in force; (2) the failure of Plaintiff to meet any of Defendant's articulated retention criteria. Plaintiff provides no direct or indirect evidence to dispute that the phased closure of the ADA practice was demonstrably false or had a discriminatory motion. She also does not dispute that the ADA practice was the only department she worked in at the firm.

As to the retention criteria, Plaintiff argues that criteria is pretextual because not all attorneys who were retained met all of the selection criteria. Plaintiff also argues that she believes that residing out of state would not have affected her ability to continue employment with Defendant. Plaintiff misses the mark with these arguments, both of which demonstrate a fundamental misunderstanding of the facts and the controlling law.

First, Defendant asserts that it chose to retain attorneys who met **one or more** of the following criteria: attorneys who were physically located in California; **and/or** were actively working in other practice areas; **and/or** had experience relevant to the firm's other practice areas. While not all retained attorneys met all three criteria, it is undisputed that Plaintiff met none of them.

Second, the fact that Plaintiff disagrees with Defendant's inclusion of physical presence in California as a selection criteria is irrelevant. In cases involving a reduction in force ("RIF"), the relevant legal question is not whether Plaintiff can propose "better" alternative criteria of which she qualifies. The question is whether Defendant applied its RIF plan in a nondiscriminatory manner. *Cotton v. City of Alameda,* 812 F.2d 1245, 1249 (9th Cir. 1987). The authorities cited by Defendant in its opposition/cross-motion make clear that courts will not second-guess a business's selection criteria absent evidence of discriminatory application. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 (9th Cir. 2000); *Cotton*, 812 F.2d at 1249. Therefore, whether Plaintiff could have also learned other practice areas over time and performed her job duties from Colorado are entirely immaterial because that is not the criteria Defendant chose. Whether to employ out-of-state attorneys is a quintessential business judgment decision, and Plaintiff's disagreement about the significance of the costs associated with doing so does not create a triable issue regarding pretext. See *Cotton*, 812 F.2d at 1249; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). The selection criteria did not disproportionately affect persons with disabilities. Plaintiff simply did not meet any of them.

Plaintiff further attempts to discredit Defendant's selection criteria by arguing that Defendant retained a group of ADA attorneys to handle remaining ADA matters and that she would have preferred to remain in that group. Defendant's cross-motion already addressed the central point: Defendant had a legitimate business (and professional) reason to retain a number of attorneys temporarily to ensure remaining ADA matters were properly resolved and closed, even after the firm stopped accepting new ADA intakes. Defendant also presented evidence that as the ADA docket continued to decline, the firm eventually laid off those who did not meet its criteria. Plaintiff's argument that she could have been selected for the retained "core group" is precisely the type of second-guessing of RIF decision-making that does not establish pretext absent evidence the

selection itself was driven by discriminatory motive. See *Cotton*, 812 F.2d at 1249; *Coleman*, 232 F.3d at 1289.

Additionally, Plaintiff's belief that seniority should have played a more significant role also does not establish pretext. Defendant has already shown there is no authority requiring an employer to structure an RIF by seniority. Again, the operative inquiry is discriminatory application, not whether some alternative selection method might have kept Plaintiff employed. *Coleman*, 232 F.3d at 1289; *Cotton*, 812 F.2d at 1249. Plaintiff's Opposition does not explain how failing to take seniority into account could have disproportionately affected disabled employees.

Finally, Plaintiff's falsity challenge to RIF criteria does not supply the missing causation showing required under the but-for standard in *Murray*. It is undisputed that the firm discontinued its ADA practice for financial reasons, which resulted in a substantial reduction in force. Against that record, Plaintiff identifies no evidence that disability was the determinative factor in the termination decision—i.e., that she would have been retained notwithstanding the ADA practice closure and the broader firm-wide layoffs. See *Murray*, 934 F.3d at 1107–08.

**E. Defendant is entitled to summary judgment on Plaintiff's IIED claims because ordinary employment disputes are not actionable under this theory as a matter of law.**

Plaintiff's IIED theory rests on a single employment action: termination during a reduction in force, which Plaintiff characterizes as discriminatory and "under the auspices of a layoff." That is not enough. As discussed in detail in Defendant's opposition/cross-motion, Plaintiff does not allege threats, harassment, or other independent tortious conduct outside the ordinary employment context; her allegations concern a personnel decision within the employer-employee relationship. Controlling authority forecloses Plaintiff's attempt to treat a disputed employment decision as "outrageous" purely because she alleges discriminatory motive. *Lawler* holds that "a simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Lawler v. Montblanc N. Am.*, LLC, 704 F.3d 1235, 1245 (9th Cir. 2013). Schneider likewise affirms summary judgment where the

alleged workplace conduct did not rise to the requisite level of outrageousness. *Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991).

California appellate courts apply the same rule. See, e.g., *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80–81 (Cal. Ct. App. 1996); *Trerice v. Blue Cross of Cal.*, 209 Cal. App. 3d 878, 883–85 (Cal. Ct. App. 1989). And attempts to "manufacture" outrageousness by reframing an employment decision as pretext do not change the analysis. *Light v. Dep't of Parks & Rec.*, 14 Cal. App. 5th 75, 101 (2017).

### 1. No Evidence of Intent to Cause Severe Emotional Distress

Plaintiff argues that Defendant's knowledge of her alcoholism and bipolar disorder means Defendant knew termination would cause severe emotional distress. That argument does not satisfy the IIED intent element under controlling law. IIED requires that the defendant act with the intention of inflicting injury, or engage in conduct with the realization that injury will result—not simply that the plaintiff would predictably be upset about losing her job. *Hughes v. Pair*, 46 Cal. 4th 1035 (2009). Nor does Plaintiff's emphasis on her subjective sensitivity alter the analysis because outrageousness and intent in this context are evaluated through an objective lens focused on the defendant's conduct, not the employee's anticipated reaction. *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 45 (1987). As detailed in Defendant's opposition/cross-motion, the record reflects a personnel action taken in the course of a firm-wide layoff, not conduct designed to inflict emotional harm.

### 2. No Admissible Evidence of Severe Emotional Distress

Plaintiff must also produce evidence of "severe" emotional distress, not merely conclusory allegations that the termination was distressing. *Hughes*, 46 Cal. 4th at 1050. As Defendant established in its opposition/cross-motion, the only evidentiary support Plaintiff submitted for this claim was an unsigned third-party declaration to which Defendant objected. Plaintiff otherwise did not submit admissible evidence sufficient to raise a triable issue on "severe" distress. Rule 56 requires more than unverified and inadmissible submissions. Fed. R. Civ. P. 56(a); *Celotex*, 477

U.S. at 322–23. On this record, Plaintiff has not offered admissible proof of the type and severity of distress necessary to sustain an IIED claim at the summary judgment stage.

### IV.  CONCLUSION

For the foregoing reasons, Defendant Potter Handy respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff Sara Gunderson's complaint in its entirety.

Dated: February 20, 2026        **POTTER HANDY, LLP**

By: */s/ Isabel Rose Masanque*
   Isabel Rose Masanque
   Attorneys for Defendants